UNITED STATES, Appellee,

v.

Corporal John A. ZUBKO, U.S. Marine Corps, Appellant.

No. 48757.

NMCM No. 83 4273.

U.S. Court of Military Appeals.

Aug. 20, 1984.

For Appellant: *Lieutenant J. Cunyon Gordon*, JAGC, USN (argued); *Major Patrick H. McGann, Jr.*, USMC (on brief); *Lieutenant Commander Jeanne Carroll*, JAGC, USN.

For Appellee: *Major J. S. Uberman*, USMC (argued); *Commander W. J. Hughes*, JAGC, USN (on brief).

*Opinion of the Court*

FLETCHER, Judge:

On July 8, 1983, appellant was tried before a special court-martial composed of a military judge alone. Pursuant to his pleas, he was found guilty of two specifications of possession of marihuana and two specifications of distribution of marihuana, all offenses charged as violations of Article

134, Uniform Code of Military Justice, 10 U.S.C. § 934. *See* para. 213*g*, Manual for Courts-Martial, United States, 1969 (Revised edition) (ch. 7, effective Oct. 1, 1982). The military judge sentenced appellant to a bad-conduct discharge, confinement at hard labor for 140 days, forfeiture of $380.00 pay per month for 5 months, and reduction to pay grade E-1. The convening authority approved the adjudged sentence. On November 15, 1983, the Court of Military Review affirmed the findings of guilty and the sentence.

The facts giving rise to the above offenses can be summarized as follows: On May 31, 1983, Corporal Pitnello telephoned Corporal Zubko and asked for assistance in obtaining some marihuana. Corporal Zubko informed Pitnello that he would have to ask his roommate to get it for him. Pitnello lent Corporal Zubko an automobile to use for that purpose. Zubko and his roommate drove to the roommate's "connection" and obtained only the amount of marihuana Pitnello had requested and then returned to their off-post residence in Garden Grove, California. After calling again to ascertain that the marihuana had been obtained, Pitnello came to Zubko's house. Zubko had the 26 grams of marihuana in his hand and passed it directly to Pitnello.

A virtually identical series of events transpired on June 9, 1983. On June 8 Pitnello again telephoned, asking appellant to procure more marihuana. Zubko again prevailed upon his roommate, whereupon they went to the connection and got the requested amount of marihuana. The next day (June 9) Zubko took it to Pitnello at a parking lot behind the commissary on board the Air Station. Again, as was the case on May 31, the quantity possessed was the quantity distributed.

At trial Zubko pleaded guilty to two instances each of possession and distribution. The military judge notified him before the plea inquiry began that he saw essentially two acts instead of four, and that he intended to so consider them for sentencing. The trial judge described the pairs of offenses as merged together, and in reciting the elements of the offenses gave one set of elements for the May 31 transaction and one set for the June 9 transaction. Trial defense counsel did not object to this procedure, and appellant indicated that he understood the elements as recited. The military judge accepted the guilty pleas as provident and entered guilty findings.

This Court granted review on the following two issues of law:

I

WHETHER ERROR OCCURRED WHEN THE MILITARY JUDGE ENTERED FINDINGS OF GUILTY TO SEPARATE SPECIFICATIONS OF WRONGFUL POSSESSION AND WRONGFUL DISTRIBUTION OF 26 GRAMS OF MARIHUANA ON OR ABOUT 31 MAY 1983.

II

WHETHER ERROR OCCURRED WHEN THE MILITARY JUDGE ENTERED FINDINGS OF GUILTY TO SEPARATE SPECIFICATIONS OF WRONGFUL POSSESSION AND WRONGFUL DISTRIBUTION OF 8.7 GRAMS OF MARIHUANA ON OR ABOUT 9 JUNE 1983.

We have considered these questions in light of the decision of the Supreme Court in *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), and the decision of this Court in *United States v. Baker*, 14 M.J. 361 (C.M.A. 1983). We conclude that the findings of guilty to these possession specifications charged under Article 134 must be vacated as lesser-included offenses of the distribution offenses laid under this same codal article.

No resolution of a multiplicity-for-findings question can begin without examination of the findings of guilty which are said to be multiplicious. *See United States v. Baker, supra* at 368. In the present case, they are as follows:

Charge: Violation of the Uniform Code of Military Justice, Article 134.

Specification 1: In that Corporal John A. ZUBKO, U.S. Marine Corps, Marine All Weather Attack Squadron 242, Marine Aircraft Group 13, 3d Marine Aircraft Wing, Fleet Marine Force, Pacific, Marine Corps Air Station, El Toro (Santa Ana), California, *did, at Garden Grove, California, on or about 31 May 1983, wrongfully possess 26 grams, more or less, of marihuana, a Schedule I controlled substance.*

Specification 2: In that Corporal John A. ZUBKO, U.S. Marine Corps, Marine All Weather Attack Squadron 242, Marine Aircraft Group 13, 3d Marine Aircraft Wing, Fleet Marine Force, Pacific, Marine Corps Air Station, El Toro (Santa Ana), California, *did, at Garden Grove, California, on or about 31 May 1983, wrongfully distribute 26 grams, more or less, of marihuana, a Schedule I controlled substance.*

Specification 3: In that Corporal John A. ZUBKO, U.S. Marine Corps, Marine All Weather Attack Squadron 242, Marine Aircraft Group 13, 3d Marine Aircraft Wing, Fleet Marine Force, Pacific, Marine Corps Air Station, El Toro (Santa Ana), California, *did, at Marine Corps Air Station, El Toro (Santa Ana), California, on or about 9 June 1983, wrongfully possess 8.7 grams, more or less, of marihuana, a Schedule I controlled substance.*

Specification 4: In that Corporal John A. ZUBKO, U.S. Marine Corps, Marine All Weather Attack Squadron 242, Marine Aircraft Group 13, 3d Marine Aircraft Wing, Fleet Marine Force, Pacific, Marine Corps Air Station, El Toro (Santa Ana), California, *did, at Marine Corps Air Station, El Toro (Santa Ana), California, on or about 9 June 1983, wrongfully distribute 8.7 grams, more or less, of marihuana, a Schedule I controlled substance.*

(Emphasis added.)

———

The first question which must be addressed is whether these convictions arose from the same act or transaction. *See*

para. 74*b* (4), Manual, *supra.* The findings of guilty indicate that the time, place, and amount of marihuana involved in specifications 1 and 2 are identical and the same relationship exists for specifications 3 and 4. In this situation, an issue of multiplicity for findings is raised. *See United States v. Baker, supra.*

■ There is some evidence in this record of trial that appellant possessed the drugs in question at a time and place different from the time and place he distributed the same drugs. For example, the record shows that sometime prior to the distribution of the drugs on May 31, 1983, at his apartment in Garden Grove, California, he went to some different but unknown place to procure these drugs. In addition, the record shows that on June 8, 1983, he again went to some different but unknown place to procure the drugs he subsequently distributed on June 9, 1983, at the Marine Corps Air Station. This evidence does not undermine our conclusion that both offenses for which he was convicted arose from the same act or transaction.

We note that the evidence of record clearly shows that these possessions were for the sole purpose of the subsequent distributions of the drugs. More importantly, the earlier possessions were not particularly alleged in the specifications before us. Both specifications 1 and 2 address possession and distribution at Garden Grove, California—not at some unknown place. Both specifications 3 and 4 address the possession and distribution on June 9, 1983, at the Marine Corps Air Station-not at some unknown place on June 8, 1983. The trial judge confirmed this relationship in the following colloquy:

MJ: Now, I take it the first two specifications and the last two specifications occurred at the same time. Is that correct?

ACC: Yes, sir; they did.

MJ: Now, I'm going to read Specifications 1 and 2 together, and then, 3 and 4. I'll read the elements together; and then,

if I find your plea provident to both of them, or all four of them, I'll consider, basically, just two specifications for sentencing. In other words, two acts instead of four. Do you understand that?

ACC: Yes, sir; I do.

MJ: Now, Specification 1 will merge with Specification 2; and Specification 3 will merge with Specification 4. O.K. The first two specifications—the elements are that on or about the 31st of May of 1983, at Garden Grove, California, you wrongfully possessed and distributed 26 grams, more or less, of marihuana, a Schedule I controlled substance. Now, for the second element, combining both situations— that is that the possession and the distribution by you was unlawful; . . .

In light of the pleadings and evidence, we therefore conclude that the corresponding specifications arose from the same act or transaction. *See United States v. Gomez*, 593 F.2d 210, 222 (3d Cir.) (Gibbons and Aldisert, JJ., dissenting), *cert. denied*, 441 U.S. 948, 99 S.Ct. 2172, 60 L.Ed.2d 1052 (1979).

The next question we must address is whether Congress intended a military accused to stand separately convicted at a court-martial for two offenses arising from the same act or transaction. Article 44, UCMJ, 10 U.S.C. § 844; *see Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *cf.* para. 74*b* (4), Manual, *supra*.[1] More particularly, did Congress intend that appellant stand convicted of possession of marihuana under Article 134 and distribution of the same amount of marihuana at the same time and place under the same codal article?[2]

■ In the present case we note that there is only one statutory provision, Article 134, which was violated. This statute is not particular as to the precise conduct it prohibits, and it must be construed in light of authoritative interpretations of military law, existing service customs, and common usages. *Parker v. Levy*, 417 U.S. 733, 749–51, 94 S.Ct. 2547, 2558–59, 41 L.Ed.2d 439 (1974); *see United States v. Kick*, 7 M.J. 82, 83–84 (C.M.A. 1979). In terms of proof, paragraph 213*g*, Manual, *supra*, explains the elements of drug offenses as

1. Some support for this provision can be found in the following statement in W. Winthrop, *Military Law and Precedents* 404 (2d ed. 1920 Reprint):

> TO BE ENTIRE AND SINGLE. In the absence of any statutory direction on the subject, usage has established that the sentence of a court-martial shall be, in every case, an *entirety*; that is to say that there shall be but a single sentence covering all the convictions on all the charges and specifications upon which the accused is found guilty, however separate and distinct may be the different offenses found, and however different may be the punishments called for by the offences.[69]

> [69] As to civil practice, *see* Wharton, C.P. & P. [Criminal Practice and Procedure] §§ 910, 911; 1 Bishop, C.P. [Criminal Procedure §§ 1325–1334.

In this context he was simply contrasting the practice of a unitary or "lumping" sentence for offenses at a court-martial with the separate-sentence-for-separate-offenses practice in civilian courts. *See* Wharton and 1 Bishop, both *supra*.

2. The decision of this Court in *United States v. Baker*, 14 M.J. 361, 368 (C.M.A. 1983), did not create new military law. In fact, it continued

the practice of construing paragraph 74*b* (4), Manual for Courts-Martial, United States, 1951, and Manual for Courts-Martial, United States, 1969 (Revised edition), in accordance with constitutional commands and statutory dictates. *See United States v. Doss*, 15 M.J. 409, 412–13 (C.M.A. 1983); Youngblood, *Multiplicious Pleading*, 8 Mil.L.Rev. 73 (1960). The origin of the above manual provision is explained in detail in the *Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951*, pp. 77–78. This new manual provision was promulgated to bring military practice into accord with Supreme Court and other federal decisions. Regardless of the correctness of the drafter's assessment of that law thirty-four years ago, it does not accurately reflect the practice of dismissing lesser-included offenses today. *See* n. 7, *infra*. Moreover, its concern with the tasks of reviewing authorities, although justified in an earlier era of military law, does not release this Court from its statutory responsibilities. Article 67, Uniform Code of Military Justice, 10 U.S.C. § 867. Finally, the discussion therein does not take into consideration the ramifications such a provision might have on the substantive law-making power of Congress and Article 44, UCMJ, 10 U.S.C. § 844. *See generally Missouri v. Hunter*, 459 U.S. 359, 103 U.S. 673, 74 L.Ed.2d 535 (1983).

conduct prejudicial to good order and discipline in the armed forces. *See generally Schlesinger v. Councilman*, 420 U.S. 738, 760–61 n. 34, 95 S.Ct. 1300, 1314–15 n. 34, 43 L.Ed.2d 591 (1975). Examination of the legislative history of this codal article reveals no clearly expressed legislative intent that multiple convictions should stand in the situation presented to us.[3] *See Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *cf. Missouri v. Hunter, supra*, 103 S.Ct. at 678–79. Moreover, since paragraph 213*g*, Manual, *supra*, is relatively new,[4] no established practice of military law exists on this question.[5]

 In such a situation, the Supreme Court has stated the statute or statutes violated must be interpreted to discern the intent of Congress. *Whalen v. United States, supra*; *see generally Missouri v. Hunter, supra*. Accordingly, the pivotal question becomes what method of statutory interpretation should be utilized to determine whether Congress intended two convictions to stand under Article 134 for two offenses arising from the same act or transaction. *See generally United States v. Nichols*, 401 F.Supp. 1377 (E.D. Mich. 1975); *see also* Note, *The Federal Bank Robbery Act—The Problem of Separately Punishable Offenses*, 18 Wm. & Mary L.Rev. 101, 103–07 (1976). Normally when two distinct statutes are involved, the rule of statutory interpretation is that found in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). *See Missouri v. Hunter, supra* 103 S.Ct. at 678–79. *Blockburger* states:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

A lesser-included offense [6] does not meet this test for separate offenses.[7] *See*

3. Hearings on H.R. 2498 Before a Subcomm. of the House Armed Services Committee, 81st Cong., 1st Sess. 1235, 1237–40 (1949), reprinted in *Index and Legislative History, Uniform Code of Military Justice*.

4. Prior to 1982, wrongful possession, use, transfer, sale, or introduction of drugs were normally punished under Article 134, UCMJ, 10 U.S.C. § 934. *See* Form Specifications 144–46, Appendix 6c, Table of Maximum Punishments, and para. 127*c*, 1969 Manual, *supra*; *United States v. Simmons*, 19 C.M.R. 640, 644 n. 1 (A.F.B.R. 1955); *cf. United States v. Thurman*, 7 M.J. 26 (C.M.A. 1979).

5. Two decisions of this Court, *United States v. Fruscella*, 21 U.S.C.M.A. 26, 44 C.M.R. 80 (1971) and *United States v. Maginley*, 13 U.S.C.M.A. 445, 32 C.M.R. 445 (1963), have been cited for the proposition that as a matter of military law, possession is not a lesser-included offense of transfer. *See United States v. Long*, 7 M.J. 342 (C.M.A. 1979). Those cases hold only that possession and transfer are not lesser-included offenses of sale and turn on the technical definition of sale as a transfer of title with or without possession. Today, we decide whether possession is a lesser-included offense of distribution when defined as delivery or transfer of an item to the possession of another. *See* para. 213*g* (3), 1969 Manual, *supra*.

6. In both *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), and *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d

168 (1977), the Supreme Court established the general rule that a greater offense and its lesser-included offense were the same offense for purposes of the double-jeopardy clause. In these cases, the Supreme Court focused on the statutory elements of each offense and concluded that under the rule of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), each statutory provision did not require proof of a fact which the other did not. *Cf.* Blair, *Constitutional Limitations on the Lesser Included Offense Doctrine*, 21 Am. Crim. L. Rev. 445, 457–59 (1984). It further observed that a lesser included offense, as normally defined, requires no proof beyond that which is required for conviction of the greater offense.

As a matter of military law, a lesser-included offense is not strictly defined on the basis of comparison of the statutory elements. Instead, this Court for a long time has made reference to the requirements of proof contained in the specifications. *See United States v. Duggan*, 4 U.S.C. M.A. 396, 399–400, 15 C.M.R. 396, 399–400 (1954). The Supreme Court has left open the question whether the application of the *Blockburger* rule to the charges in an indictment is acceptable to determine whether a violation of the double-jeopardy clause has occurred. *See Whalen v. United States*, 445 U.S. 684, 694 n. 8, 100 S.Ct. 1432, 1439 n. 8, 63 L.Ed.2d 715 (1980); *Brown v. Ohio, supra* 432 U.S. at 166–67 n. 6, 97 S.Ct. at 2225–26 n. 6; *Jeffers v. United States, supra* 432 U.S. at 151 n. 17, 97 S.Ct. at 2216 n. 17. *See also Missouri v. Hunter, supra*, 103 S.Ct.

*Brown v. Ohio, supra,* 432 U.S. at 166–67 n.6, 97 S.Ct. at 2205–26 n. 6; *United States v. Baker, supra* at 368–69.

A second method of statutory construction, considerably broader in scope, has developed in some circuits where two distinct provisions of the same statute are violated by the same act or transaction. This merger-of-convictions concept is based on the decision of the Supreme Court in *Prince v. United States,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1956); *see also United States v. Gaddis,* 424 U.S. 544, 549 n. 12, 96 S.Ct. 1023, 1026 n. 12, 47 L.Ed.2d 222 (1976). This concept of statutory interpretation is applicable to a particular type of criminal statute which is drafted in a comprehensive manner so as to proscribe each step leading to the commission of the ultimate offense, the ultimate offense itself, and aggravated forms of the ultimate offense. *See generally* Note, 18 Wm. & Mary L.Rev., *supra* at 101–03. The circuits are in general agreement that, absent a clearly expressed legislative intent to the contrary, Congress did not intend to impose more than one punishment for all the violations of such a

statute which may arise from one transaction. *See Bryan v. United States,* 721 F.2d 572, 574–76 (6th Cir. 1983), *cert. denied,* ___ U.S. ___, 104 S.Ct. 1315, 79 L.Ed.2d 711 (1984); *United States v. Fried,* 436 F.2d 784, 786–87 (6th Cir. 1971). However, the circuits are in disagreement as to whether such a statute can also be construed to reflect a congressional intent that only one conviction stand for such violations. *Id*; *see United States v. Gomez, supra* at 212–13.[8]

A single statute (Article 134) was the subject of both convictions, and a single manual provision (paragraph 213*g* ) discusses both offenses. Paragraph 213*g* states:

> Possession, use, introduction into a military unit, base, station, post, ship, or aircraft, manufacture, distribution, and possession, manufacture, or introduction with intent to distribute, of a controlled substance are offenses under Article 134.

The elements of these offenses, however, are discussed later in separate sections of this manual paragraph. In particular, it is stated:

> *United States v. Graziano,* 710 F.2d 691, 699 (11th Cir. 1983), *cert. denied,* ___ U.S. ___, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984); *United States v. Lewis,* 626 F.2d 940, 944 (D.C. Cir. 1980); *cf. Government of the Virgin Islands v. Soto,* 718 F.2d 72, 75 (3d Cir. 1983). This practice is relatively new (*see O'Clair v. United States,* 470 F.2d 1199 (1st Cir. 1972), *cert. denied,* 412 U.S. 921, 93 S.Ct. 2741, 37 L.Ed.2d 148 (1973) ), and today its basis is recognized as the Supreme Court's double-jeopardy decisions in *Brown v. Ohio* and *Jeffers v. United States,* both *supra. See United States v. Buckley, supra. Cf. O'Clair v. United States, supra.*

---

at 680 n. 2 (Marshall and Stevens, JJ., dissenting). *Cf. Thigpen v. Roberts,* ___ U.S. ___, 104 S.Ct. 2916, 82 L.Ed.2d 23 (1984) (Rehnquist, J., dissenting) and *Whalen v. United States, supra* 445 U.S. at 708–13, 100 S.Ct. at 1446–49 (Rehnquist, J., and Burger, C.J., dissenting).

The Government in this case has neither challenged the *Duggan* definition of a lesser-included offense nor asserted that it is inappropriate with respect to the double-jeopardy principles embraced in Article 44. *See United States v. Baker, supra* at 367. [*See generally* M. Friedland, *Double Jeopardy* 208–213 (1969).] Moreover, this case is decided on the basis of the elements of the offense as explained in paragraph 213*g*, 1969 Manual, *supra.*

7. It is well established in the federal courts that, absent a clearly expressed legislative intent to the contrary, a defendant cannot stand convicted of both a greater offense and its lesser-included offense. *See United States v. Glover,* 16 M.J. 397, 399 (C.M.A. 1983) (Fletcher, J., concurring); *see also United States v. Raimondo,* 721 F.2d 476, 477 (4th Cir. 1983); *United States v. Buckley,* 586 F.2d 498, 504–05 (5th Cir. 1978), *cert. denied,* 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (1979); *United States v. Rust,* 650 F.2d 927, 928 (8th Cir. 1981); *United States v. Woodward,* 726 F.2d 1320, 1326 (9th Cir. 1983);

8. It is not clear whether those circuits which reject the merger-of-conviction doctrine but accept the merger-of-sentence doctrine based on *Prince v. United States,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), would vacate a conviction under one provision of such a statute if it were found to be a lesser-included offense of another provision of this same statute. *See United States v. Mourad,* 729 F.2d 195, 203–04 (2d Cir. 1984); *United States v. Oropeza,* 564 F.2d 316 (9th Cir. 1977), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978); Note, *The Federal Bank Robbery Act—The Problem of Separately Punishable Offenses,* 18 Wm. & Mary L.Rev. 101, 104–07 (1976).

Proof.

(1) *Wrongful possession of controlled substance.* (a) That the accused possessed a certain amount of a controlled substance; (b) that the possession by the accused was wrongful; and (c) that, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

\* \* \* \* \* \*

(3) *Wrongful distribution of controlled substance.* (a) That the accused distributed a certain amount of a controlled substance; (b) that the distribution by the accused was wrongful; and (c) that, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

In view of the punishment scheme for these offenses (*see* Table of Maximum Punishments, para. 127*c*, Manual, *supra*, ch. 7—effective Oct. 1, 1982), it is unclear whether we are construing in substance closely related statutory provisions or a single statutory provision proscribing various steps on the way to a single ultimate offense. *See United States v. Gomez, supra*. It is our conclusion that we should construe this provision in light of the decisions of the Supreme Court in *Blockburger v. United States, supra*, and not along the lines of *Prince v. United States, supra*. *Cf. United States v. Oropeza*, 564 F.2d 316 (9th Cir. 1977), *cert. denied*, 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978).

The next question we must decide is whether the simple-possession offense charged in this case under Article 134 and paragraph 213*g*, Manual, *supra*, is a separate offense under the *Blockburger* rule from the distribution offense charged under the same codal article and manual paragraph. *See United States v. Stevens*, 521 F.2d 334, 337 n. 2 (6th Cir. 1975); *United States v. Benn*, 476 F.2d 1127, 1132 n. 23 (D.C. Cir. 1972). One circuit has concluded that simple possession under 21 U.S.C. § 844(a) is a lesser-included offense of dis-

tribution under 21 U.S.C. § 841(a)(1). *United States v. Howard*, 507 F.2d 559, 561 (8th Cir. 1974); *see United States v. Frantze*, 655 F.2d 128, 130 (8th Cir. 1981); *United States v. Burns*, 624 F.2d 95, 105 (10th Cir.), *cert. denied*, 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980). Another circuit has held precisely the opposite. *United States v. Costello*, 483 F.2d 1366 (5th Cir. 1973); *United States v. Horsley*, 519 F.2d 1264 (5th Cir. 1975), *cert. denied*, 424 U.S. 944, 96 S.Ct. 1413, 47 L.Ed.2d 350 (1976). *Cf. United States v. Jackson*, 526 F.2d 1236 (5th Cir. 1976). A third group of circuits has held, in cases involving possession with intent to distribute and distribution under 21 U.S.C. § 841(a)(1), that the convictions may stand but only one punishment could be imposed under the reasoning of *Prince v. United States, supra*. *See United States v. Gomez, supra* at 213–24; *United States v. Oropeza, supra* at 323–24; *United States v. Stevens, supra*; *United States v. Curry*, 512 F.2d 1299 (4th Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 55, 46 L.Ed.2d 50 (1975). *Cf. United States v. Ray*, 731 F.2d 1361, 1368 (9th Cir. 1984).

Turning to the elements of these offenses under Article 134, we note both possession and distribution are explained in paragraph 213*g*, Manual, *supra*. That paragraph states:

(2) *Possess*. "Possess" means to exercise control of something. Possession may be direct physical custody like holding an item in one's hand, or it may be constructive, as in the case of a person who hides an item in a locker or car to which that person may return to retrieve it. Possession must be knowing and conscious. Possession inherently includes the power or authority to preclude control by others. It is possible, however, for more than one person to possess an item simultaneously, as when several people share control of an item. An accused may not be convicted of possession of a controlled substance if the accused did not know that the substance was present under the accused's control. Awareness of the presence of a con-

trolled substance may be inferred from circumstantial evidence.

(3) *Distribute.* "Distribute" means to deliver to the possession of another. "Deliver" means the actual, constructive, or attempted transfer of an item, whether or not there exists an agency relationship.

These definitions are critical to our conclusion that possession of a drug under Article 134 is a lesser-included offense to distribution of the same drug at the same time and place. *See generally United States v. Brunty,* 701 F.2d 1375, 1380–81 (11th Cir.), *cert. denied,* ___ U.S. ___, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983).

█ We first note that possession, as explained in paragraph 213*g,* Manual, *supra,* generally means the exercise of control of a drug. We agree with the Fifth Circuit in *United States v. Horsley* and *United States v. Costello,* both *supra,* that proof of receipt of a drug from another establishes the crime of possession. However, in view of the broad language of the manual provision, we cannot say that proof of the fact of receipt is a necessary requirement of proof for this offense. Any "exercise [of] control" over the drug, including acts subsequent to receipt of the drug, is sufficient. In this regard, we note that the physical act of transferring drugs has been considered sufficient evidence to convict a person of possession. *See United States v. Gougis,* 374 F.2d 758 ( 7th Cir. 1967).

Our second observation is that "[p]ossession" as explained in paragraph 213*g,* Manual, *supra,* "inherently includes the power ... to preclude control by others." It is reasonable to assume that such power or control also inherently includes the power to not preclude control by others. *See United States v. Oropeza, supra* at 322. A transfer, in our opinion, is an exercise of this power or control. *See United States v. Brunty, supra* at 1380. Also "[p]ossess" as explained in the manual, embraces the situation where "more than one person ... possess[es] an item simultaneously, as when several people share control of an item." This language is surely broad enough to encompass the situation of distribution which may raise questions as to whether the distributor or the person distributed to possessed the drug, actually or constructively, during the delivery process.

Our final observation concerns the conclusion of several federal courts that distribution may occur without proof of possession, actual or constructive, in the distributor. *Cf. United States v. Nichols, supra* at 1381–82. This conclusion is stated in *United States v. Stevens, supra* at n.2, but no particular explanation is provided.[9] *See also United States v. Curry, supra.* A more recent decision from a federal court has intimated that such a conclusion is justified by the broad meaning of distribution as prohibited in 21 U.S.C. § 841(a)(1). *See United States v. Brunty, supra.* These statutory provisions, however, are not identical to the definitions of distribution in paragraph 213*g,* Manual, *supra,* and the difference in our opinion is significant.

The word "distribute," as used in 21 U.S.C. § 841(a)(1), is defined in 21 U.S.C. § 802(11) as meaning "to deliver (other than by administering or dispensing) a controlled substance." The word "distribute" in paragraph 213*g,* Manual, *supra,* is defined as meaning "to deliver *to the possession of another."* (Emphasis added.) Both 21 U.S.C. § 802(8) and paragraph 213 *g,* Manual, *supra,* defined the word "deliver" similarly—*i.e.* "the actual, constructive, or attempted transfer of an item, whether or not there exists an agency relationship."

**9.** The court in *United States v. Stevens,* 521 F.2d 334, 337 n. 2 (6th Cir. 1975), placed great weight on the fact that both distribution and possession with intent to distribute were subject to the same maximum penalty: 15 years. This same situation is not present in appellant's case. Here, simple possession of marihuana under 30 grams was punishable by 2 years' confinement and distribution of the same substance was pun-ishable by 5 years' confinement. *See* Table of Maximum Punishments, para. 127*c,* Manual, *supra* (ch. 7—effective Oct. 1, 1982). Moreover, possession with intent to distribute and distribution are both offenses under 21 U.S.C. § 841(a)(1), while simple possession is an offense under 21 U.S.C. § 844(a). In military law all three offenses are crimes under Article 134, and paragraph 213*g,* 1969 Manual, *supra.*

It was the conspicuous omission of language " 'of possession' or otherwise" limiting or qualifying the operative term "transfer" which led one circuit to conclude that proof of possession was not required for the crime of distribution prohibited in 21 U.S.C. § 841(a)(1). *United States v. Brunty, supra* at 1380 and 1381 n. 16. Since paragraph 213*g*, Manual, *supra,* contains such language, the rationale of this decision is not controlling in our situation. *See State v. Medina,* 534 P.2d 486, 487 (N.M. App. 1975); *State v. McHorse,* 85 N.M. 753, 517 P.2d 75, 78 (App. 1973).

It is our opinion that each simple-possession offense in this case was a lesser-included offense of the corresponding distribution offense. *United States v. Jackson* and *United States v. Howard,* both *supra.* Possession required no proof beyond that which was required for conviction of the crime of distribution. *See Brown v. Ohio, supra.* The elements of this possession offense were included within the elements

of proof for this distribution offense. *See United States v. Baker, supra.*

The decision of the United States Navy-Marine Corps Court of Military Review is reversed as to specifications 1 and 3 of the Charge; the findings of guilty as to those specifications are set aside, and those specifications are dismissed. In view of the fact that the military judge did not separately sentence appellant on the dismissed specifications, the decision below is affirmed in all other respects.

EVERETT, Chief Judge (concurring):

As Judge Fletcher explains, under present Manual language [1] possession of the drug here was a lesser-included offense of its distribution; so specifications as to both crimes should not coexist.[2] It also follows that in a trial for distribution of drugs, the judge should advise the court members that possession is a lesser-included offense if it is reasonably raised by the evidence.[3]

---

1. Para. 213*g*, Manual for Courts-Martial, United States, 1969 (Revised edition) (Ch. 7).

2. I concede that it is somewhat difficult to reconcile our present ruling with this Court's refusal to hold that, under prior Manual language, possession is lesser included in transfer.

3. In *United States v. Frantze,* 655 F.2d 128, 130 (8th Cir. 1981), the Court of Appeals upheld the trial judge's refusal to instruct on possession as a lesser included offense since, under the facts there, if defendant possessed the drug, he must have distributed it.